## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Nancy J. Epperson

 v.

Walter G. Epperson

By JUDGE WILLIAM H. LEDBETTER, JR.

June 3, 1987

This case, a suit for dissolution of a partnership pursuant to Virginia Code § 50-32, is before the court on the defendant's motion to dismiss and plea of collateral estoppel.

In her suit, Mrs. Epperson alleges that a business known as "Epperson's Used Auto Parts" is a partnership

in which she and her husband own partnership interests. The partnership agreement is allegedly a verbal agreement which continued until October - November, 1985, when, as a result of marital conflicts, Mr. Epperson removed Mrs. Epperson from the business. That action, Mrs. Epperson alleges, constitutes a dissolution or justifies a court in ordering dissolution under Virginia Code § 50-32.

The matter is complicated by the fact that there is now pending in this court a suit for divorce filed by Mrs. Epperson in which Mrs. Epperson seeks, inter alia, an adjudication of the parties' property rights under Virginia Code § 20-107.3 (the "equitable distribution" statute). Thomas Y. Savage, Esq., has been appointed commissioner in that suit, and, pursuant to a decree of reference, the commissioner has conducted a hearing and filed a preliminary report.

### Status of the Case

Mr. Epperson has filed a plea of collateral estoppel and a motion to dismiss contending, in essence, that the pending divorce suit raises issues identical to those raised in the partnership dissolution suit; that these issues already have been submitted to the commissioner; and that this second suit is needlessly vexatious and duplicative.

Mrs. Epperson, at the hearing on Mr. Epperson's motion and plea on May 26, 1987, concedes that the court could make a determination of the existence or non-existence of a partnership in the divorce suit, but the commissioner has not reported on such issue. Further, and most importantly, Mrs. Epperson argues that the court cannot grant the same relief under § 20-107.3 as partners may seek under Section 50-32.

### Opinion

The doctrine of collateral estoppel, akin to res judicata, pertains to collateral determinations of issues, or questions, by a court having jurisdiction to decide the matter. The conclusiveness of judgment in a prior action bars subsequent litigation of the same issue or question upon a different cause of action.

Here, Mrs. Epperson raises an issue (i.e., existence of a partnership and the dissolution thereof) which has not been conclusively determined in any collateral litigation. In fact, it appears that the issue has not been squarely addressed in the pending divorce suit.

Without doubt, the commissioner and chancellor *could* make a determination regarding the existence or non-existence of a partnership in connection with a determination of property rights under § 20-107.3. But, as noted above, this has not yet been done. Further, if the chancellor found the existence of a partnership, he would have no authority under the equitable distribution statute to take the next step and determine whether any partner is entitled to a dissolution under § 50-32.

There having been no "prior determination," and the issues raised in this suit being somewhat dissimilar to those raised in the divorce suit's equitable distribution proceedings, as explained above, the plea of collateral estoppel is denied and overruled.

In addition, Mrs. Epperson is correct in pointing out that the *relief* available to spouses under § 20-107.3 is quite different than that available to business partners under § 50-32.

Pursuant to the provisions of the equitable distribution statute, the court is to determine the *legal title, ownership, and value* of all property of the parties. If, indeed, Epperson's Used Auto Parts is a partnership between Mr. and Mrs. Epperson, ownership of the assets of that business do not belong to either partner/spouse; they constitute partnership property owned by the partnership as an entity. It is elementary that partners have no ownership interest in specific items of partnership property. Rather, the partners own percentage interests in the partnership itself (classified as intangible personal property). Therefore, in an equitable distribution adjudication, the court could determine that (a) there is no partnership, and thus all of the partnership assets are owned by one spouse -- the sole proprietor, or (b) there is a partnership, and each spouse owns a certain percentage interest in the partnership. The value of each interest could be ascertained by resort to recognized accounting methods. Then, in either event, the court would proceed to classify such interests as "separate property" or

"marital property," using the definitions set forth in Section 20-107.3(A)(1) and (2).

But the court is not authorized to distribute the property. The use of the term "equitable distribution" has caused confusion and misapplication of the statute in Virginia because, unlike similar statutes in other states, the hallmark of the legislation in Virginia is a monetary award which can be satisfied by the party against whom such award is made by conveyance of property, subject to approval of the court. As emphasized in *Williams v. Williams*, 4 Va. App. 19 (1987), the trial court's concern is actually an equitable *division* of marital wealth, not equitable *distribution* by assignment or allotment of specific property. Only as to property "titled in the names of both parties" does the trial court have the authority to order the conveyance or partition of marital property in equitable distribution proceedings. Section 20-107.3(C). Because partnership property obviously is not property "titled in the names of both parties," no sale, partition, or other meaningful means of dissolution would be available under § 20-107.3 if it were determined that the spouses were business partners in a commercial venture.

For this reason, the court is of the opinion that the enactment of § 20-107.3 was not intended to eliminate all other possible modes of relief between spouses where, as here, they may be business partners who need a different sort of relief than that afforded to spouses under the equitable distribution statute. Stated differently, the court concludes that the General Assembly did not remove the availability of relief under § 50-32, and similar laws relating to commercial organizations, in all cases where business partners, shareholders, etc., happen also to be married to one another.

Mr. Epperson advances his argument a second step. He points out that even if other sorts of relief are statutorily available, Mrs. Epperson has specifically chosen the relief afforded in § 20-107.3, and she should not now be allowed to select an alternative method of relief in a separate suit.

No authority has been cited, and none has been discovered by the court's independent research, which would support the proposition that the enactment of equitable

distribution legislation creates the sole and exclusive means of resolving disputes pertaining to property interests between spouses, even where one spouse, in the first instance, seeks an adjudication under the equitable distribution statute. Conversely, the *Klotz* cases, cited by Mrs. Epperson, predate the equitable distribution statute and are inapposite in other significant particulars.

Assuming without deciding that there is at least some merit in Mr. Epperson's second contention (i.e., that Mrs. Epperson is now precluded from pursuing relief under § 50-32 because she has already chosen to seek the relief afforded by § 20-107.3), the court nevertheless is of the opinion that the motion to dismiss should be denied and overruled. A fairer and more reasonable procedure should be structured so that this crucial issue can be squarely addressed and resolved while at the same time avoiding a multiplicity of suits.

This objective can be accomplished by consolidating the two pending suits and referring the partnership issues to the same commissioner who is presently executing the reference in the divorce suit.

I have communicated with Mr. Savage, and he has assured the court that he is able and willing to expedite a hearing on a supplemental reference and will file a report promptly. The approach should satisfy Mrs. Epperson's concern for an early determination of the partnership issues while at the same time allaying Mr. Epperson's legitimate fears of multiplicity of suits.

### Conclusions

Mr. Daltan will prepare an order denying and overruling the motion to dismiss and plea of collateral estoppel filed by Mr. Epperson and heard on May 26, 1987; consolidating the partnership dissolution suit with the divorce suit; referring the partnership issues (to be specifically set out in the order) to Mr. Savage, as a supplemental reference, for taking of evidence limited solely to those issues; and for a final report to the court.

Counsel are admonished to proceed with a hearing before the commissioner within thirty days from this date for presentation of all evidence (which cannot be stipulated) relating to the existence or non-existence

of a partnership and, if so established, the justification for relief by means of dissolution under § 50-32. Mr. Savage has agreed to file the transcript of such hearing and his final report promptly thereafter.

### December 11, 1987

This opinion involves two chancery cases: (1) a suit for divorce filed by Nancy J. Epperson against her husband, Walter G. Epperson, in May of 1985; and (2) a suit for dissolution of an alleged partnership between the same parties filed by Mrs. Epperson in April of 1987. These suits have been consolidated for hearings and disposition.

Mr. and Mrs. Epperson were married in 1961 and lived together until 1974. Three children, all of whom are now adults, were born of the marriage. In October of 1974, Mr. Epperson left the marital home in Spotsylvania County following disputes associated with his infidelity.

Since that time, the relationship between Mr. and Mrs. Epperson has been unorthodox, to say the least.

After leaving the jointly-owned residence, Mr. Epperson lived at various places in the Fredericksburg area until he purchased a mobile home in Spotsylvania County, where he now lives. Mrs. Epperson remained in the home and reared the couple's children. She still lives there. The parties never lived together again under the same roof. In many respects, they led separate lives. Nevertheless, with considerable frequency, Mr. and Mrs. Epperson found the time and the inclination to sleep together, travel together, launch a business together, and work around the house and yard together. Without cataloging all of the instances recited in the evidence, it is noteworthy that the parties took trips to Florida in 1981 and 1982, to Pennsylvania in 1983, and to Virginia Beach and Nashville, Tennessee, in 1984. In 1983, Mr. Epperson was allowed conjugal visits to the home regularly for almost three months in exchange for his willingness to purchase furniture for the house.

Meanwhile, the parties squabbled frequently, primarily about one another's extra-marital social activities. For a while, Mr. Epperson apparently lived with another woman.

He admits that he "strayed from the straight and narrow" and fathered a child by Mrs. Deborah Martin.

Against this background, it is strange indeed that in 1977 Mr. and Mrs. Epperson decided to go into business together, a decision which, once implemented, created the primary source of controversy in this litigation.

The business, known as Epperson's Used Auto Parts, began in Mrs. Epperson's home (the former marital residence) in 1978. Shortly, a garage and shop were built, and a salvage storage yard was enclosed on jointly-owned real estate within a stone's throw of Mrs. Epperson's home. Mrs. Epperson ran the office and attended to the administrative, clerical, and bookkeeping aspects of the business; Mr. Epperson was responsible for the major portion of the salvage operations and the "outside" work. Mrs. Epperson quit her job at Roxbury Mills to get the business started. Mr. Epperson continued his fulltime job at Mary Washington Hospital, working in the business during his off hours, for several years. Then he terminated his other employment and devoted full time to Epperson's Used Auto Parts. It is obvious that both parties devoted long, difficult hours to the task of building the business, and, until recently, they cooperated better in their business relationship than they were able to do in the rocky on-again, off-again personal relationship. Even after Mrs. Epperson filed her bill for a no-fault divorce, both parties reported to work regularly and maintained the business on an even keel. However, when Mrs. Epperson amended her bill to allege desertion and adultery and sought equitable distribution of the marital property, including the business, the last strands of civility were severed.

### Status of Proceedings

Mrs. Epperson filed her original bill, seeking a divorce on the basis of a one-year separation, on May 20, 1985. Mr. Epperson filed an answer denying that the parties had lived separate and apart without interruption for one year.

On October 25, 1985, with leave of court, Mrs. Epperson amended her bill to allege desertion and adultery and sought spousal support and equitable distribution of the marital property. Mr. Epperson answered the amended bill

with denials and filed a cross-bill. Mrs. Epperson filed a demurrer to the cross-bill which was sustained on December 2, 1985. No amended cross-bill has been filed.

At a pendente lite hearing on November 4, 1985, the court awarded spousal support to Mrs. Epperson in the amount of $200.00 per week and granted other incidental relief. Other pendente lite orders have been entered, one which included a reduction of spousal support to $100.00 per week, and another which restrained the parties from harassment and transfer of marital assets.

Depositions were held on June 25, 1985, April 10, 1986, April 30, 1986, and May 19, 1986.

The issues related to divorce and equitable distribution were referred to a commissioner in chancery who conducted hearings on June 3-4, 1986. The commissioner filed a report on November 26, 1986.

On April 1, 1987, Mrs. Epperson filed a second suit, this one to dissolve the business, Epperson Used Auto Parts, which she alleged to be a partnership between the parties. After hearing arguments on Mr. Epperson's motion to dismiss and plea of collateral estoppel, the court denied the motion and plea, consolidated the suits, and referred the issues raised in Mrs. Epperson's second suit to the same commissioner appointed in the divorce suit. Counsel waived the presentment of further evidence, and, after receiving arguments of counsel, the commissioner filed a second report on August 12, 1987.

Both parties filed exceptions to the commissioner's second report, which were argued on November 16, 1987.

### Divorce

Based on the testimony heard by the commissioner and the depositions tendered to him for consideration, the commissioner found that the pre-1983 extra-marital conduct of Mr. Epperson was condoned by Mrs. Epperson. He further found that the 1985 acts alleged in paragraphs 10 and 11 of her amended bill are fully proven by the evidence, are not barred by condonation or any other defense, and justify the granting of a divorce on the ground of adultery.

A commissioner's report is entitled to great weight and will not be disturbed unless its conclusions are

unsupported by the evidence or misapplies legal principles. *Hill v. Hill*, 227 Va. 569 (1984). In addition, the court independently has reviewed and weighed the evidence, Virginia Code § 8.01-610, and finds that Mrs. Epperson's allegations of adulterous conduct in 1985 have been established by clear, positive, and convincing evidence.

With respect to all allegations of adultery other than the 1985 incidents, the evidence supports the commissioner's finding that such acts were condoned by Mrs. Epperson. *See McKee v. McKee*, 206 Va. 527 (1965). Mrs. Epperson knew of these dalliances, complained about them, refused to live with Mr. Epperson because of them, yet she continued to engage in sexual relations with him on a rather frequent basis at least until the fall of 1983.

Further, there is not the slightest corroboration of any of the pre-1985 acts. Without such corroboration, Mrs. Epperson's charges, accompanied by suspicious circumstances and Mr. Epperson's admission that he "strayed from the straight and narrow" and, in fact, fathered a child by another woman, are not sufficient.

Still, further, all or most of the pre-1985 acts are barred by Virginia Code § 20-94. *Also see Tarr v. Tarr*, 184 Va. 443 (1945).

Still, the testimony of Herbert E. Hunter, a Fairfax investigator hired by Mrs. Epperson in August - October of 1985, when considered with the other evidence of Mr. Epperson's extra-marital activities, provides the basis for a divorce on this ground. These specific acts of adultery were alleged in paragraphs 10 and 11 of the amended bill and have been proven by clear and convincing evidence. See depositions of Herbert E. Hunter taken on April 10, 1986, pp. 3-50, and on May 19, 1986, pp. 66-67.

Accordingly, the court is of the opinion that Mrs. Epperson is entitled to a divorce on the ground of adultery pursuant to Virginia Code § 20-91(1).

The evidence also establishes that the parties have lived separate and apart without interruption since at least October of 1984, a period in excess of one year. Virginia Code § 20-91(9).

*Equitable Distribution*

The subject of equitable distribution, particularly the business known as Epperson's Used Auto Parts, is the crux of this litigation.

Mr. Epperson claims that the business is not marital property. He argues that the business belongs to him and that Mrs. Epperson was merely an employee. In this litigation, he has impeded efforts to inventory and evaluate the business assets, and he has ousted Mrs. Epperson from the company (an action which the court reluctantly perpetuated simply because there was no reasonable pendente lite alternative).

Mr. Epperson's position regarding the appropriate classification of the business deserves little discussion because it is patently groundless, if not absurd.

The parties formed the business in 1977 and operated it together until 1985, when Mrs. Epperson was removed. Although they were not living under the same roof during any of this time, the relationship of the parties was that of husband and wife, and their association has been described in detail above. The business was located on jointly-owned property adjacent to the former marital residence where Mrs. Epperson lived (and still lives). Both parties expended considerable time and energy to the operation of the business. Although much time has been expended in this proceeding by each party trying to show that he/she was the dominant force in the enterprise, it is fair to conclude, on balance, that each party has made substantial and essentially equal contributions to the formation and operation of the business.

The definition of marital property is set forth in plain language in Virginia Code § 20-107.3(A)(2). Even if one were to accept Mr. Epperson's contention that he is the real "entrepreneur" of the business and Mrs. Epperson was just an "employee," the business nonetheless would be classified as marital property, by definition. Such an argument, if true, would go to the *amount* of a monetary award (i.e., Virginia Code § 20-107.3(E)(2)) but would be immaterial to the threshold inquiry regarding its *classification.* Furthermore, the court rejects Mr. Epperson's owner-versus-employee analysis for the reasons discussed in more detail below.

Accordingly, the court is of the opinion that Epperson's Used Auto parts is marital property.

The parties jointly own 12.15 acres of land, upon which is situated the former marital residence and the business. The land and improvements are valued at $131,000.00. The parties jointly own two lots in Stonebridge Subdivision, located adjacent to the business, valued at $18,000.00 each. Another parcel, unimproved, located in the same vicinity, is titled in the name of Mr. Epperson and valued at $3,000.00. The parties own a lot in Lake Caroline, a mobile home (Mr. Epperson's residence), and a cemetery lot at Laurel Hill. All of the above-mentioned properties are marital property, as that term is defined in § 20-107.3(A)(2).

The money market account in the name of Mr. Epperson was purchased with funds inherited by him. The account is his separate property. Virginia Code § 20-107.3(A)(1).

The record is insufficient to enable the court to make further findings, much less to make a final adjudication, on the issue of equitable distribution. The matter must be remanded to the commissioner for further proceedings to determine: (1) the value of the business; (2) the amount of liens, if any, against the real estate mentioned above; (3) the ownership, classification, and value of any other real estate not mentioned above; (4) the ownership, classification, and value of all other property acquired by these parties during the marriage and prior to October of 1984. The parties are mandated to provide the commissioner with sufficient information regarding each of these factors, forthwith, and the costs of any unnecessary delays and unwillingness to stipulate to facts which can and should be stipulated shall be assessed against the uncooperative party. When the commissioner has completed the hearing(s) and reviewed the additional evidence, he shall file a supplemental report which consolidates all of his findings regarding identity, ownership, classification, present location, and value of all items of property, real and personal, as well as the amount of any liens against any of the items.

## Dissolution

In her second suit, Mrs. Epperson asks the court to dissolve Epperson's Used Auto Parts, which she alleges to be a partnership.

Although the court cannot adjudicate the issue of equitable distribution, for the reasons explained above, the related issue raised in the suit for dissolution will be addressed in this opinion (supplementing the earlier opinion of June 3, 1987).

A partnership is an association of two or more persons to carry on as co-owners a business for profit. Virginia Code § 50-6(1). Partnership relations are formed by express contract or by implied contract between parties for the joining together of their money, goods, labor, or skill in a venture, upon an agreement to divide the gains or losses between them. *Cooper v. Knox*, 197 Va. 602 (1956). Husband and wife have the capacity to enter into a partnership with one another.

It is admitted that there is no express partnership contract in this case. The question turns on whether the parties had an implied agreement. Mr. Epperson, of course, denies that they did.

Certain rules, or criteria, are established in the Uniform Partnership Act to aid in determining the existence of a partnership. *See* Virginia Code § 50-7.

Based on the evidence presented, the commissioner found that Epperson's Used Auto Parts is a partnership. As noted above, a commissioner's report is entitled to respect and great weight, especially where the testimony is in conflict and the evidence was taken in his presence.

An independent review of the facts adduced on this subject confirms the commissioner's findings.

This business was formed by the parties, jointly, three years after they ceased living together. Both had fulltime jobs at the time, but Mrs. Epperson soon quit hers and devoted full time to the business. Several years later, Mr. Epperson left his employment and devoted full time to the business. Mr. Epperson applied for, and obtained, the county business license in his name only, but other business documents, such as the zoning certificate and conditional use permit, were issued in the names of both parties. Almost all of the business debts were incurred

in the names of both parties "trading as Epperson's Used Auto Parts." The business is located on jointly-owned real estate. The parties' contributions to the business are essentially equal.

No partnership tax returns were filed. The parties filed joint returns reflecting their income from the business. No part of their income was ever listed as "wages," no W-2 forms were prepared, and the business never withheld taxes or social security from moneys drawn by the parties.

Through the years, the parties shared the gross returns and profits of the business. Although Mr. Epperson vehemently denies that he shared profits with Mrs. Epperson, there is persuasive evidence that all of the moneys which the parties withdrew from the business were, in fact, profits, and were divided equally between them on a regular basis in the form of draws. Because the parties treated the company's earnings in a very loose fashion -- paying personal debts, etc., from the business proceeds -- and because much of the profits were retained in the business for expansion, the division of "profits" is an elusive feature. Nevertheless, it is obvious that so much of the profits as were drawn upon were distributed in cash to each party, separately.

The facts in this case differ from those in *Cooper v. Spencer*, 218 Va. 541 (1977). There, the plaintiff claimed a share of the assets of a business "partnership," but she offered no evidence regarding any of the indicia of partnership and simply stated, "when man and his wife live together, that is enough for me to say there was a partnership." The Court held, understandably, that the spousal relationship may be enough for Mrs. Spencer, but it is not enough to satisfy the criteria set forth in the Uniform Partnership Act. Thus, the Court concluded that Mrs. Spencer had failed to elevate "a family operation" to a business partnership. In contrast, Mrs. Epperson has presented substantial proof of the existence of a true partnership. Because the parties were not living together and often were at odds with one another over various and sundry aspects of their personal lives, this business cannot be characterized as "a family operation." Basically, there was no family. Although certain personal and joint obligations and expenses were paid out of the

business, for the most part, each party had his/her own set of expenses and drew money out of the business, as shared profits, to meet them.

For the foregoing reasons, the commissioner's finding that Epperson's Used Auto Parts is a partnership between Mr. and Mrs. Epperson will be confirmed and Mr. Epperson's exception will be overruled.

Having established the existence of a partnership, Mrs. Epperson asks the court to dissolve the partnership under partnership law, not under the equitable distribution statute.

As stated in its opinion letter dated June 3, 1987, this court is of the opinion that the General Assembly did not remove the availability of relief under § 50-32 and similar laws relating to commercial enterprises in all cases where business associates happen also to be married to one another. Stated differently, the enactment of § 20-107.3 was not intended to eliminate all other possible modes of relief between spouses where, as here, they were business partners as well as husband and wife.

(This ruling will set no significant precedent. Rarely will a case be presented in which two people go into business together while they are husband and wife but living separate personal lives. In most cases, "joint" commercial undertakings between spouses would fall within the rationale and holding of *Cooper v. Spencer*, *supra*, and would be identified merely as a "family operation," the assets of which would constitute marital property and be subject to the provisions of § 20-107.3.)

Mrs. Epperson understands that the usual method of dissolving a partnership, either voluntarily or involuntarily, is to wind up the business, liquidate its assets, pay its debts, and distribute any surplus to the partners according to their proportionate partnership interests. *See, e.g.*, Virginia Code §§ 50-32, 50-38, and 50-40. Nonetheless, she urges that the court fashion some sort of alternative equitable relief to permit the business to continue so that it could be sold as a "going business." Implicit in this request is Mrs. Epperson's interest in purchasing the business, but only if, at the time of purchase, it is a viable, operating enterprise.

Dissolution of a partnership does not terminate the partnership. The partnership continues until the winding

up of partnership affairs is completed. Virginia Code Section 50-30. Thus, during the winding up period, the business would be susceptible of sale as a "going business," if such a transaction were otherwise feasible.

Also, in a proper case, the court may appoint a receiver of a business partnership in accordance with the provisions of Virginia Code § 8.01-591 *et seq.* Normally, a receiver is appointed in cases where assets are being wasted or dissipated, or the business is insolvent, for the purpose of marshalling the assets, winding up the business as expeditiously as possible, and paying the creditors of the business.

In this case, the court declines Mrs. Epperson's invitation to fashion an extraordinary equitable remedy or to appoint a receiver to run the business in lieu of the normal dissolution process. There are several reasons why such an approach would be impractical in this case.

First, both parties admit that Epperson's Used Auto Parts is a small, personal enterprise that depends upon the presence and direct participation of the parties or at least one of them. Any long-term receivership would be counterproductive, therefore, unless one of the parties remained in the business and agreed to operate it. Because of the irreconcilable animosity between the parties, it is unclear how Mrs. Epperson proposes to accomplish such a process. It is just as uncertain whether Mr. Epperson, who owns an interest in this partnership, would agree to or cooperate with any such transitional operation.

Second, the business is located on jointly-owned property under a jointly-named conditional use permit. Even if the business itself were permitted to continue to function under supervision of the court, each co-owner of the real estate has a right to equitable division of the jointly-titled real estate, a marital asset, on which the business is located.

On balance, the most equitable disposition of the business is to treat each spouse's partnership interest as marital property and to determine its value so that the court can consider a monetary award under § 20-107.3 after the commissioner has filed his supplemental report, after which the partnership will be dissolved in the cus-

tomary manner if Mrs. Epperson insists upon its dissolution under § 50-32(1)(b), (c), (d), or (f).

## March 22, 1988

This divorce suit, consolidated with a suit for dissolution of a business partnership between the same parties, is before the court again on pendente lite motions. The motions were heard ore tenus on March 21, 1988.

### Motion for Award of Attorney's Fees

At the hearing in support of her motion, Mrs. Epperson presented evidence that established that she has incurred more than $17,500.00 in legal fees and more than $9,000.00 in related costs associated with this litigation. She conceded that she charged $2,500.00 of these expenses to a Gold Line credit card for which the parties are jointly liable, and that she has paid only $650.00 of that liability. Mr. Epperson offered no evidence.

Virginia Code § 20-103 provides that the court may, at any time pending the suit, in its discretion, "make any order that may be proper to compel a spouse to pay any sums necessary . . . to enable [the petitioning] spouse to carry on the suit . . . ." The statute confirms the uniform practice in divorce suits of allowing a spouse without means a reasonable sum for counsel fees and costs of litigation, to be paid by the other spouse, pendente lite.

It is unnecessary to repeat here all of the pertinent facts giving rise to this litigation; and, likewise, it is unnecessary to recite again the court's observations regarding the role of each of these parties, especially Mr. Epperson, in impeding the progress of these proceedings. On balance, it is the opinion of the court, as stated at the hearing, that Mrs. Epperson should be awarded the sum of $5,000.00 attorney's fees, less the sum of $1,850.00 which remains a liability of Mr. Epperson on the Gold Line account, for a net amount of $4,150.00. This sum is to be paid by Mr. Epperson to Mrs. Epperson not later than May 1, 1988, subject to a final assessment and allowance of costs at the conclusion of the case.

Mr. Epperson will be permitted to pay this allowance from the partnership assets of Epperson's Used Auto Parts, if he so chooses, and the court will take such payment into account in determining the amount of any monetary award under Virginia Code § 20-107.3.

### Motion to Order the Sale of the Partnership Business

In her second motion, Mrs. Epperson asks the court to consolidate the divorce suit with the partnership dissolution suit, to allot a portion of jointly-owned real estate to the partnership business, and to order the sale of the business.

This request is at odds with the court's opinion of December 11, 1987. In a nine-page opinion letter, the court held (A) that Mrs. Epperson is entitled to a divorce based on the ground of adultery, (B) that the divorce suit and the partnership dissolution suit should be consolidated (see also the court's opinion letter dated June 3, 1987), (C) that Epperson's Used Auto Parts is a partnership between Mr. and Mrs. Epperson, (D) that each spouse's partnership interest in Epperson's Used Auto Parts is a marital asset subject to disposition under § 20-107.3, and (E) that under the circumstances of this case, the parties' partnership interests should be distributed under Section 20-107.3, as requested by Mrs. Epperson in her bill for divorce, and the court declines Mrs. Epperson's request, made in the companion dissolution suit, to dissolve the partnership under Virginia Code § 50-32 or to appoint a receiver for the business under Virginia Code § 8.01-591 et seq.

On the basis of these five specific findings and assorted other rulings on issues set forth in the opinion letter, the court stated:

> The record is insufficient to enable the court to make further findings, much less to make a final adjudication, on the issue of equitable distribution. The matter must be remanded to the commissioner for further proceedings to determine: (1) the value of the business; (2) the amount of liens, if any, against the real estate . . . (3) the ownership, classification,

and value of any other real estate [not ruled upon in that opinion]; (4) the ownership, classification, and value of all other property acquired by these parties during the marriage and prior to October, 1984. *The parties are mandated to provide the commissioner with sufficient information regarding each of these factors, forthwith . . . . When the commissioner has completed the hearing(s) and reviewed the additional evidence, he shall file a supplemental report which consolidates all of his findings . . . .* [Emphasis added.]

As of this date, more than three months after that opinion letter, no such further proceedings have taken place.

Notwithstanding the clear mandate quoted above, Mrs. Epperson asserts that the best route to a proper valuation of the business is to sell it as a going business and that a public sale with obviate the delay and expense of additional commissioner's hearings. (This assumes, of course, that all other outstanding issues relating to equitable distribution have been resolved now by agreement of the parties. Predictably, Mr. Epperson denies that they have been.)

There are limitations to the court's power to partition property in connection with an equitable distribution proceeding.

First, the method of accomplishing partition is governed by § 8.01-81 *et seq. Morris v. Morris*, 3 Va. App. 303 (1986). Value must be determined, and the court must decide whether the property can be partitioned in kind or must be sold.

Second, only "marital property which is titled in the names of both parties" is subject to partition. Section 20-107.3(C). (*Cf. Payne v. Payne*, 5 Va. App. 359 at 367 (1987), apparently construing the statutory language to include non-titled jointly-owned property).

Third, no conveyance, sale, partition, or other disposition of marital assets, whether or not jointly owned, is contemplated until the court has made the essential preliminary findings clearly provided in the statutory scheme: determination of legal title as between the parties,

ownership, value of all property, and classification of all such property as "marital" or "separate." § 20-107.3(A).

Therefore, although Mrs. Epperson's plea that a sale would be the best determinant of value has surface appeal, it puts the cart before the horse; and, at least without agreement of the parties, violates the letter and spirit of the equitable distribution statute.

Accordingly, the motion will be denied, and the parties are again instructed to proceed with further hearings before the commissioner in chancery, consistent with the court's rulings expressed in the opinion letter of December 11, 1987, quoted above.

It is obvious that the primary stumbling block toward a resolution of this controversy is the lack of a valuation of the business. Mrs. Epperson claims that Mr. Epperson will not cooperate in obtaining a reasonable appraisal of the business and that she cannot afford to do so with her own funds. The burden is on the parties to present evidence to provide the basis on which a proper determination of value can be made. The court cannot engage in guesswork or speculation. However, where it is apparent that there is a gross disparity between the financial means of the parties, and where one spouse is in control of the marital asset that must be valued and refuses to participate in a joint or mutual endeavor to have the asset professionally appraised, the court is at liberty to use its equitable powers to order an expert appraisal and to assess the costs of such appraisal, and the costs of expert testimony of the appraiser. At previous pendente lite hearings, Mrs. Epperson has been advised that she could hire an appraiser for the purpose of offering expert testimony to the commissioner, and that if the parties cannot agree to a method of payment for this professional service, the court will assess such costs on her motion. The court is still of the opinion that that is the appropriate manner by which to proceed. Mr. Epperson is on notice that his continuing unwillingness to approach this valuation problem in a fair, reasonable, and expeditious manner may very well mean that *all* costs associated with a proper appraisal of the business will be charged to him.

■■■■■■

December 9, 1988

In this opinion, the court addresses exceptions to the report of the commissioner in chancery filed in this case on August 18, 1988. Arguments on the exceptions were heard on October 4, 1988. Thereafter, the parties submitted memoranda.

## Status of the Proceedings

This case is a consolidation of two suits: a divorce suit which has been pending for more than 3½ years, and a partnership dissolution suit filed in April of 1987.

Several sets of depositions have been taken, pendente lite hearings have been held, commissioner's hearings have been conducted, and a number of written opinions have been filed. The most significant opinion was filed on December 11, 1987, and the rulings therein expressed were incorporated in an order dated January 29, 1988. That opinion describes in considerable detail the prior proceedings and the factual background of this case and need not be repeated here.

Mrs. Epperson was granted a divorce on the ground of adultery on June 21, 1988. On motion of both parties, the case was continued for adjudication of equitable distribution.

Meanwhile, the matter of equitable distribution had been referred back to the commissioner. Another hearing was conducted after which the commissioner filed his third report.

## The Commissioner's Report

The report which is the subject of this opinion was made by the commissioner after hearing testimony of witnesses, including the parties, and reviewing depositions tendered to him.

A commissioner's report is entitled to great weight, and his findings of fact should not be disturbed unless plainly wrong, especially when the evidence has been taken in his presence. Nevertheless, the court has independently reviewed the evidence and applicable legal authorities. Virginia Code § 8.01-610.

In his report and two attachments, the commissioner has identified the property of the parties; determined the legal title, ownership, and value of each item; classified the properties as "marital" or "separate"; and made recommendations for distribution of the marital assets.

*Identity of the Property*

The commissioner has identified the parties' property as follows:

| | Item | Legal Title | Classification |
|---|---|---|---|
| 1. | Money Market Account | Joint | Separate-WGE |
| 2. | 8A and Buildings | Joint | Marital |
| 3. | Lake Caroline Lot | Joint | Marital |
| 4. | Lot 19-Stonebridge | Joint | Marital |
| 5. | Lot 17-Stonebridge | Joint | Marital |
| 6. | Trailer | Joint | Marital |
| 7. | 4A and House | Joint | Marital |
| 8. | Cemetery Lot | None | Marital |
| 9. | Epperson's Auto Parts | None | Marital |
| 10. | 1A Lot | WGE | Marital |

The parties have presented no evidence regarding their tangible personal property. In one of the hearings, Mr. Epperson declared that Mrs. Epperson could have these items. In another hearing, he apparently indicated a change of mind; but, when given the opportunity to produce evidence regarding such items, he did not do so. Similarly, Mrs. Epperson has said nothing about any tangibles that may be in Mr. Epperson's possession. No exceptions were taken to the commissioner's findings regarding tangibles. Consequently, the court concludes that each party has abandoned any interest which he or she may have had in items of tangible personal property in the possession of the other, and the matter will not be considered further.

Therefore, the properties subject to equitable distribution are those listed by the commissioner on the attachments to his report, as set forth above.

*Legal Title; Ownership*

As set forth in the list above, the commissioner found that the parties hold joint legal title to items 1 through 7. There is no evidence of legal title to the cemetery lot. The one-acre lot is titled to Mr. Epperson.

In a previous proceeding in this case, the court rules that Epperson's Used Auto Parts is a commercial partnership owned by the parties in equal shares. (See opinion dated December 11, 1987.)

Neither party has taken exception to the commissioner's findings regarding legal title and ownership of their property, except that Mr. Epperson continues to assert sole ownership of the auto parts business contrary to the court's earlier ruling.

Therefore, legal title and ownership of the various items of property are as stated by the commissioner, with the clarification that Epperson's Used Auto Parts is a partnership owned in equal shares by the parties.

*Value*

On the attachment to his report, the commissioner has valued each item of property based on the evidence presented. Two of those valuations bear discussion.

The trailer which serves as Mr. Epperson's residence was valued at $15,540.00 by Mrs. Epperson's appraiser and at $10,000.00 by Mr. Epperson's witness. As the commissioner notes, "both experts were credible." The commissioner used an average of the two appraisals. The court finds no error in the commissioner's approach to valuation of the trailer at $12,770.00. The commissioner further found that the trailer is encumbered by a lien in excess of $15,000.00. Since the liability is greater than the fair market value, the trailer has no equity value.

The appraisals of the business vary greatly. The commissioner concluded that Mr. Epperson's evidence regarding business valuation was "weak, insufficient, and therefore unreliable." For that reason, he used the values supplied by the expert witnesses of Mrs. Epperson. Upon a review of the testimony, the court agrees with the commissioner. Without doubt, the evidence as to value of Epperson's Used Auto Parts presented by Mrs. Epperson

is the more credible, conforms to accepted appraisal methods, and is the more reliable.

This does not end the matter of the business valuation. Mrs. Epperson's witnesses offered two appraisals. As of 1985, they said, the business had a value of $282,000.00. As of 1988, the value had declined to $200,000.00. The commissioner made no recommendation as to which of Mrs. Epperson's valuations should be used.

Mrs. Epperson acknowledges that under the 1988 statutory amendment as well as under pre-1988 law, the court is required to determine value as of the date of the evidentiary hearing unless a different date is chosen for good cause, in order to obtain the ends of justice. Nevertheless, she urges the court to use the higher 1985 valuation because, she says, it was at that time that she was "removed" from the business, and the diminution in value since then has been the fault of Mr. Epperson.

The court denies Mrs. Epperson's request that the 1985 valuation be used rather than the generally-recognized valuation date. She has offered no evidence that reduction in value is the result of any wrongdoing, waste, spite, mismanagement, or carelessness. Rather, she asks the court to assume that this diminution in value is the fault of Mr. Epperson simply because he has been running the business by himself since 1985.

Therefore, the court is of the opinion that the business has a value of $200,000.00 and that each of the other items of property has the value determined by the commissioner.

### Classification

The money market account, an inheritance, is Mr. Epperson's separate property. Mrs. Epperson has not taken exception to this determination by the commissioner, and it is supported by credible evidence.

As noted above, the court has determined in a previous proceeding in this case that Epperson's Used Auto Parts is a partnership owned by the parties in equal shares. Each party's interest in that business is marital property.

All other items of property are marital property, as reported by the commissioner.

*Distribution of the Property*

After making the determinations discussed above, the commissioner recommended, in essence, an equal division, except that Mrs. Epperson should receive 75% of the house and appurtenant land and Mr. Epperson should receive the one-acre lot on which his trailer is located.

Before embarking upon a consideration of the factors listed in § 20-107.3(E), it is appropriate to comment on the *method* of distribution recommended by the commissioner.

At the time this suit was filed and at the time of the commissioner's hearing, Virginia courts were not authorized to distribute the marital property. (Incidentally, this is the very reason why Mrs. Epperson filed her suit to dissolve the partnership.) Instead, the court's concern was an equitable division of marital wealth, not distribution by assignment or allotment. Only as to property "titled in the names of both parties" did the trial court have power to order a conveyance or partition of marital property in an equitable distribution proceeding.

The 1988 session of the General Assembly amended the equitable distribution statute in several significant particulars. Pertinent here, § 20-107.3(C) was revised to authorize courts to order the *division or transfer* of all *jointly owned* property. As a means of dividing or transferring jointly owned marital property, or any interest therein, the court was given the power to (1) order a transfer, (2) permit either party to purchase the interest of the other, with conditions, or (3) order a private or public sale without necessity for partition.

Are these revisions, effective July 1, 1988, applicable to this case?

In an opinion dated August 23, 1988, the Attorney General opined that the new provisions of § 20-107.3(C), broadening the court's power concerning the division of jointly owned property, relate to the *remedy* a court may order and do not affect vested or substantive rights. Therefore, the Attorney General concluded, "a court may exercise its expanded powers of remedy in cases filed prior to July 1, 1988."

This court agrees with the Attorney General's reasoning. Thus, while the commissioner's recommendations regard-

ing the method of distributing the marital assets may not have been appropriate prior to July 1, 1988, they are now proper recommendations for the court's consideration. The new statutory provisions of § 20-107.3(C) may be applied in this case.

The total value of the marital property is $384,570.00 as follows:

| | |
|---|---|
| 8A and Buildings | $56,450.00 |
| Lake Caroline Lot | 750.00 |
| Lot 19 Stonebridge | 18,000.00 |
| Lot 17 Stonebridge | 18,000.00 |
| Trailer | 12,770.00 |
| 4A and House | 74,000.00 |
| Cemetery Lot | 1,600.00 |
| Epperson's Used Auto Parts | 200,000.00 |
| 1A Lot | 3,000.00 |
| | |
| Total | $384,570.00 |

The total equity value of the marital property is $362,200.00. The equity value is determined by taking the fair market value of each item, listed above, and deducting the principal balance of indebtedness which encumbers the items. Three items are encumbered: the trailer, which has a lien against it in excess of its value; Lot 19 of Stonebridge, which is encumbered by a lien in the amount of $6,700.00; and the Lake Caroline lot, which is encumbered by a lien in the amount of $670.00. (A piece of equipment owned by the business is encumbered, but that lien does not alter the overall valuation of the business at $200,000.00.)

Considering the equities, the rights and interests of the parties in the marital property, the factors listed in § 20-107.3(E), the commissioner's findings and recommendations, and the court's own independent review of the law and the evidence, the court is of the opinion that the marital assets should be evenly divided except that Mrs. Epperson should be given special credit for expenditures of time and money in improving and maintaining the house over the past fourteen years.

It is unnecessary to repeat the facts of this case which support this conclusion, all of which have been detailed and fully analyzed in previous opinions. Further, the court need not quantify the weight given to each factor which it considers in reaching an equitable division of the marital wealth.

In order to effectuate an equitable distribution and to achieve the objectives noted above, the court is of the opinion that the commissioner's approach is sound and proper, subject to the particular modifications explained below. By utilizing a combination of § 20-107.3(C) and § 20-107.3(D), the court holds as follows:

1. Each party is entitled to a 50% interest in Epperson's Used Auto Parts and to the jointly owned eight acres and buildings used in conjunction with the business. The business and the real estate will be sold, without the necessity of partition, and the proceeds divided equally between the parties.

2. The trailer and the lot on which it is located, both of which are jointly owned, shall be transferred to Mr. Epperson, subject to the lien on the trailer.

3. The Lake Caroline lot, jointly owned, shall be transferred to Mrs. Epperson, subject to the lien.

4. The two Stonebridge lots and the cemetery lot, all of which are jointly owned, shall be transferred to Mr. Epperson, subject to the lien on Lot 19.

5. The house and appurtenant four acres, jointly owned, shall be transferred to Mrs. Epperson.

6. The aforesaid division, without adjustment, would give approximately 56% of the equity value of the marital wealth to Mrs. Epperson. In order to correct such imbalance, while nevertheless giving Mrs. Epperson credit for the improvements on and maintenance of the house, a monetary award should be granted to Mr. Epperson in the amount of $8,000.00, payable in lump sum out of Mrs. Epperson's share of the proceeds of sale of the business.

7. The prayer for relief in Mrs. Epperson's second suit, i.e., dissolution of the partnership, Epperson's Used Auto Parts, is rendered moot by the retrospective applicability of the new provisions of § 20-107.3(C) utilized in this case. In any event, the procedure that the court would use to wind up and dissolve the partnership under the Virginia Uniform Partnership Act would be essen-

tially the same as the procedure to be used in disposing of that asset under the revised equitable distribution statute.

8. All tangible personal property shall belong to the party in possession, the court deeming that the other party has abandoned his or her interest in such items.

9. Unless the parties can agree upon the method and date of sale of the business and the real estate used in conjunction with the business, the court will appoint a special commissioner to conduct the sale. The parties and counsel are directed to proceed in good faith *forthwith* to seek agreement on these details and to bring the matter back before the court if no agreement can be reached within thirty days of this date.

10. For the reasons explained in a previous opinion, the court denies Mrs. Epperson's request to fashion some extraordinary equitable remedy by which the business can be operated as a going venture for some indefinite time or to appoint a special receiver to operate the business.

11. If the parties do not agree to assume any indebtedness secured by property to be transferred to them, respectively, the court may have to order the sale of such encumbered properties and/or make appropriate adjustments in the monetary award.

In reaching the conclusions set forth above, the court has not relied upon the statutory presumption of joint ownership provided in § 20-107.3(A)(2). The evidence is clear that all of the marital assets discussed herein are jointly owned with the exception of the one-acre lot titled in Mr. Epperson's name. The money market account is Mr. Epperson's separate property, and Mrs. Epperson will be directed to execute such papers as may be necessary to transfer title of the funds to him.

Unfortunately, the rulings stated in this opinion do not conclude this case. The court will reserve final determinations of an award of attorney's fees and allocation of costs until the parties have had an opportunity to cooperate in effectuating the transfers and divisions provided above. In addition, Mrs. Epperson's claim for spousal support will be reserved pending disposition of the marital property. *See* § 20-107.1(7) and (8).

The fee charged by the commissioner, including the advance of costs of the transcript, is reasonable and

is hereby approved. Each party should promptly pay to Mr. Savage one-half of $1,215.00 subject to final allocation of costs by the court.